IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACY LEA BORDEN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>AMERICAN DREAM AUTO PROTECT INC., a New York registered corporation,<br><br>*Defendant.* | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Stacy Lea Borden ("Plaintiff Borden" or "Borden") brings this Class Action Complaint and Demand for Jury Trial against Defendant American Dream Auto Protect Inc. ("Defendant ADAP" or "ADAP") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing pre-recorded calls to consumers without consent including calls to phone numbers that are registered on the national Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Borden, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Borden is a resident of Wichita, Kansas.

2. Defendant ADAP is a company incorporated in Kings County, New York with its headquarters located in Edison, New Jersey.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant ADAP because it is incorporated in Kings County, New York, which is located in this jurisdiction.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is incorporated and therefore resides in this District for venue purposes.

## INTRODUCTION

6. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in December 2025 alone, at a rate of 132.6 million per day. www.robocallindex.com (last visited January 7, 2026).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. ADAP sells extended vehicle warranty plans to consumers throughout the US.[3]

15. ADAP places calls to consumers using an automated, voice-responsive agent.

16. ADAP deployed a fully operated outbound dialer on NiCE CXone, as per the Condado website:

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.linkedin.com/company/americandreamautoprotect/about/

condado

Home About Us Services Case Studies Insights Contact Us

# Solving Complex CX Challenges: How Condado Helped ADAP Deploy a Dialer Without Full CRM Integration

## Introduction: When Enterprise CX Is Anything but Textbook

Enterprise systems are rarely implemented in pristine conditions. Project roadmaps meet operational demands, legacy decisions, and infrastructure that is still taking shape.

CRM systems are typically at the center of outbound dialer implementations. They orchestrate call eligibility, history, suppression rules, and recontact workflows. But sometimes, organizations move forward before a full CRM is available.

That was the case with **ADAP**. The objective: deploy a fully operational outbound dialer on NiCE CXone, without a standard CRM in place.

We began by designing a fully self-contained dialer logic using CXone's native capabilities. Later, as trust developed, we worked with the client's development team to introduce selective data access from their internal contact management system: an in-house tool with limited CRM functionality.

This is the story of how the system came together: from minimal state logic to an extended, data-aware dialer built for real-world constraints.

## About the Client

**ADAP** is a U.S.-based provider of extended vehicle protection plans. The company helps drivers manage repair costs beyond factory warranties through a nationwide support network. Contact center operations are central to ADAP's customer engagement and sales strategy.

## The Challenge: CXone Dialer Without Full CRM Infrastructure [4]

17. NiCE CXone is a dialer system that includes the use of AI agents who have conversational capabilities:

[4] https://www.condado.com/case-studies/american-dream-auto-protect

NiCE Platform Products Industries

# One enterprise AI platform for the next generation of CX

CXone Mpower orchestrates human and AI Agents to automate service, augment work, and accelerate smarter, faster experiences at every point of engagement. Built for the AI-first enterprise, the AI platform unifies an AI-ready data foundation, connected systems, and customer experience on one platform, turning data into intelligent action across your business. [5]

# Creating your customer access strategy with conversational AI

Discover the transformative capabilities of conversational AI and how it can revolutionize your business.

Gain insights into the paradigm shift in customer access strategies, understanding how conversational AI blends artificial intelligence, natural language processing, and machine learning to create personalized, seamless customer interactions across multiple channels. [6]

[5] https://www.nice.com/products/cxone
[6] https://www.nice.com/lps/nice-cognigy



[7]

18. Defendant ADAP places calls using its automated agent to consumers like the Plaintiff who never provided consent to receive pre-recorded/artificial calls.

19. In addition, Defendant also places calls to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

20. Consumers have posted complaints about unsolicited calls that they received from the Defendant, including:



[8]

[7] Id.
[8] https://tinyurl.com/543rfvp7

**Tim Bookhagen**
Local Guide · 28 reviews · 1 photo

★☆☆☆☆ a year ago

I called for an estimate. I didn't like what I heard I said. Thank you but no thank you. In 2 days I had 7 different representatives of American dream. Contact me they do not take no for an answer. They did not like that I went with a different company. I tried to be nice, but they kept on calling. So now this is their review. [9]

**Barbara Greenburg**
8 reviews

★☆☆☆☆ a year ago

Do not call these people unless you want to be inundated with follow up calls. They are VERY pricey and I told them I wasn't interested. I have received 4 more phone calls from them, including them hanging up on me. I had to call a supervisor to have them remove my phone number....so good luck to anyone who likes high pressure. They're also very good at telling you how big a mistake you would be making if you went with a competitor, which they spent plenty of time telling me how terrible any other company is, etc. Like I said, if you want to pay more than necessary and be annoyed incessantly, then of course call them. If you are normal person, you won't call [10]

**Initial Complaint**

**Type:** Service or Repai

**Date:** 07/17/2025

**Status:** Answered

I have received numerous calls from this company and have asked them to stop that this is harassment. I purchased a warranty from [redacted] I dont know how they obtained my information but in the last two days I have received over 10 calls from this company. They have even put me on an auto dialer. I have never heard of this company until this harassment started and cant imagine anyone wanting to do business with someone like this. Please see if you can get them to stop harassment. Thank you [11]

**Initial Complaint**

**Type:** Service or Repa

**Date:** 04/11/2024

**Status:** Answered

I have asked to be taken off their call list 10 times in the last 72hours. Keep getting phone call. Making a BBB complaint to have information taken out of their system. [12]

---

[9] Id.
[10] Id.
[11] https://tinyurl.com/3ysabjsx
[12] https://tinyurl.com/3x2yfa3k

> **High pressure tactics and harassing phone calls**
>
> December 27, 2023
>
> I first called American Dream Auto Protect back in July of 2023 to get a quote for my son-in-law. Well, that was my mistake! I called 5 different auto extended warranty companies on the same day, 4 of them gave me the quote I requested and then left me alone. But American Dream Auto Protect simply would not take no for an answer even after I told them that I was not the one buying the extended warranty and that it wasn't my decision to make. They used high pressure tactics, called, texted and emailed me several times a day even though I told them repeatedly not to do so. After I wrote a bad review for them, they called me and asked me to take it down. I told them I would take it down if they completely stopped contacting me and they said they would. So, they didn't call me for a few days but they continued to text and email me several times a day so I decided not to remove the review because they were still contacting me. From July to October, they continued to call me consistently and harassed me about taking the down the review. Finally, I thought that they had stopped harassing me when I hadn't gotten a phone call since late October... Well, I was wrong because, yesterday, on CHRISTMAS DAY in the middle of me spending time with my family, this company actually had the nerve to start calling me AGAIN and told me that if I didn't take down the review, then they wouldn't stop calling me! They called me 4 times on CHRISTMAS DAY! It was [13]

21. In response to these calls, Plaintiff Borden brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF BORDEN'S ALLEGATIONS

22. Plaintiff Borden is the sole owner and user of her cell phone number ending in 2518.

23. Plaintiff Borden's phone number was registered on the DNC on March 6, 2025.

24. Plaintiff Borden uses her cell phone number for personal use only as one would use a landline telephone number in a home.

[13] https://www.sitejabber.com/reviews/americandreamautoprotect.com

25. Plaintiff Borden uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

26. Plaintiff Borden pays for her cell phone number in full. The phone number is not reimbursed by a business.

27. Plaintiff Borden has never used her cell phone number for business purposes.

28. Plaintiff Borden acquired her cell phone number in February of 2025.

29. On December 29, 2025 at 11:04 AM, Plaintiff Borden received an unsolicited call to her cell phone from 316-453-4101.

30. This call was not answered, but it displayed the caller ID Adap:




31. On December 29, 2025 at 1:31 PM, Plaintiff Borden received a 2nd unsolicited call to her cell phone from 315-232-3111.

32. This call was not answered, but it displayed the caller ID Adap:




33. On December 29, 2025 at 3:58 PM, Plaintiff Borden received a 3rd unsolicited call to her cell phone from 316-535-7861.

34. This call was not answered, but an artificial voice agent of Defendant left a message stating:

"Hi, is this Robert?"

35. Plaintiff Borden could tell that this voicemail was delivered using an artificial voice because the message begins only after a noticeable delay and the voice sounded like an artificial voice attempting to trick the consumer into sounding like a human voice.

36. This is consistent with ADAP's advertised use of AI voice agents through NICE CXone's conversational AI platform.

37. As with the previous calls, this call from 316-535-7861 displayed the caller ID Adap:




38. Plaintiff Borden called 316-535-7861 back on December 29, 2025 at 4:00 PM.

39. An employee answered the call, identifying the company name American Dream Auto Protect.

40. Plaintiff Borden told the employee that ADAP is calling the wrong number and that she wants the calls to stop.

41. Despite her stop request, Plaintiff Borden received a 4th unsolicited call to her cell phone on December 29, 2025 at 5:08 PM from 316-710-6053.

42. This call was not answered, but an artificial voice agent of Defendant left a message stating:

> "Hi, is this Robert? This is James calling from American Dream Auto Prote…"

43. Plaintiff Borden could tell that this voicemail was delivered using an artificial voice because the message begins only after a noticeable delay and the voice sounded like an artificial voice attempting to trick the consumer into sounding like a human voice.

44. The message itself sounds unnatural and robotic.

45. As was established in ¶¶16-17, Condado advertises that ADAP uses automated AI agents through its autodialer system.

46. As with the previous calls, this call from 316-710-6053 displayed the caller ID Adap:




47. Frustrated because the calls had continued, Plaintiff Borden called 316-710-6053 back at 5:12 PM on December 29, 2025.

48. The call was answered by an employee who identified the company name American Dream Auto Protect.

49. Plaintiff told the employee that ADAP is calling for the wrong person and that she already asked for the calls to stop.

50. The employee argued back explaining that ADAP was calling Robert to sell him an extended vehicle warranty plan and that they were calling the correct number.

51. Plaintiff asked once more for the calls to stop and the call was ended.

52. In confirming that the calls were intended for Robert to sell an extended vehicle warranty plan, ADAP established that all of the calls that Plaintiff received were for the sake of a solicitation, in violation of the DNC.

53. Plaintiff Borden does not know Robert and she did not provide her cell phone to ADAP in any capacity.

54. Plaintiff Borden has never done business with ADAP.

55. The unauthorized solicitation telephone calls that Plaintiff Borden received from or on behalf of the Defendant have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

56. The calls also wasted Plaintiff's time, as she called the Defendant back twice to ask for the calls to stop.

57. Seeking redress for these injuries, Plaintiff Borden, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

58. Plaintiff Borden brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason the Defendant or an agent on behalf of Defendant called Plaintiff.
>
> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called on their cellular telephone number (2) using a pre-recorded voice message or automated attendant.

59. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally

adjudicated and/or released. Plaintiff Borden anticipates the need to amend the Class definition following appropriate discovery.

60. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

61. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) whether Defendant made calls using a pre-recorded voice to cellular telephone numbers without consent;

(c) Whether the Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

62. **Adequate Representation**: Plaintiff Borden will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent

and experienced in class actions. Plaintiff Borden has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Borden and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Borden nor her counsel have any interest adverse to the Classes.

63. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Borden. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Borden and the Do Not Call Registry Class)**

64. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

65. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

66. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

67. The Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Borden and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal

government.

68. The Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Borden and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

69. As a result of Defendant's conduct as alleged herein, Plaintiff Borden and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

70. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Borden and the Pre-recorded No Consent Class)**

71. Plaintiff repeats and realleges paragraphs 1-63 of this Complaint and incorporates them by reference herein.

72. Defendant ADAP, or an agent working on its behalf transmitted unwanted solicitation telephone calls to Plaintiff Borden and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message/automated attendant.

73. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff Borden and the other members of the Pre-recorded No Consent Class.

74. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Borden and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Borden requests a jury trial.

Respectfully Submitted,

**STACY LEA BORDEN**, individually and on behalf of all others similarly situated,

DATED this 11th day of January, 2026.

By: /s/ *Stefan Coleman*

Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Classes*

**Pro Hac Vice motion forthcoming.*